UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARLENE GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>FCA US LLC,<br><br>    Defendant. | Case No.: 1:16-cv-0730 - JLT<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS<br><br>(Doc. 80) |

In this action, Plaintiff asserts that Defendant is liable for violations of the Song-Beverly act and fraudulent inducement under California law. The parties have settled the underlying claims, and Plaintiff now seeks an award of attorney fees and costs. (Doc. 80) The Court heard the oral arguments of the parties on March 7, 2018. For the reasons set forth below, Plaintiff's motion is **GRANTED** in part.

**I.    Background**

Plaintiff purchased a 2011 Dodge Durango on January 6, 2012. (Doc. 1-1 at 4, ¶ 7) According to Plaintiff, the vehicle "was delivered to [her] with serious defects and nonconformities to warranty[,] and developed other serious defects and nonconformities to warrant including, but not limited to, transmission, suspension, steering, engine, and electrical deficits." (*Id.* at 4-5, ¶ 8)

She reports the vehicle "was factory-equipped" by Defendant "with a Totally Integrated Power ('TIPM'), which is located under the hood in the vehicle engine component." (Doc. 1-1 at 5, ¶ 9)

1

Plaintiff asserts: "The TIPM is the chief component in the … power distribution systems and consists of a computer, relays, fuses, and controls. The TIPM provides the primary means of voltage distribution and protection for the entire vehicle..." (*Id.*) Systems receiving power from the TIPM included the vehicle's "safety system[], security system, ignition system, fuel system, electrical powertrain, and … comfort and convenience systems." (*Id.*)

Plaintiff contends the TIPM installed in her vehicle was faulty, and "thus fails to reliably control and distribute power to various vehicle electrical systems and component parts," which caused transmission leaks, issues with the fuel pump relay, and the left brake light to be "inoperable on multiple occasions." (Doc. 1-1 at 5, ¶¶ 12-13) In addition, Plaintiff alleges the TIPM "is likely to cause a variety of electrical issues such as loss of headlight function, and unexpected distractions, such as the vehicle's horn or alarm sounding while on a roadway, which may increase the risk of injury for the driver, passengers, or others on the roadway." (*Id.*, ¶ 15)

According to Plaintiff, Defendant "had superior and exclusive knowledge of the TIPM defects, and knew or should have known that the defects were not known by or reasonably discovered by Plaintiff before [she] purchased or leased the Subject Vehicle." (Doc. 1-1 at 6, ¶ 16) She reports: "FCA US LLC vehicles have been plagued with severe TIPM problems for the last decade. As a result, FCA US LLC has initiated multiple TIPM related recalls to address safety or emissions concerns." (*Id.*, ¶ 18) Further, Plaintiff asserts the TIPM "defect is so widespread that… replacement parts have often been on national backorder, with drivers reporting from 2011 to 2014 that they had to wait weeks or months of have their TIPMs replaced." (*Id.*, ¶ 20) She alleges dealers and auto-technicians "advis[ed] many drivers to not drive their vehicles until the TIPM [was] replaced, due to safety risks." (*Id.*) However, Defendant did not disclose the defect "to Plaintiff prior to the purchase of the Subject Vehicle or at any point during ownership of the Subject Vehicle." (*Id.* at 17, ¶ 88)

In October 2015, "Plaintiff received a letter in the mail from the settlement administrator in a class action lawsuit informing Plaintiff that [she] was a member of a class of individuals for which a 'class action settlement involving the Totally Integrated Power Module (TIPM)' had been reached." (Doc. 1-1 at 20, ¶ 107) The letter informed her that the plaintiff in *Velasco, et al. v. Chrysler Group LLC*, Case No. 2:13-cv-08080-DDP-VBK (C.D. Cal) claimed the TIPM "installed in model-years

2011, 2012, and 2013 Dodge Durango and Jeep Grand Cherokee vehicles is defective and poses a safety hazards." (*Id.*) Plaintiff contends this was "the earliest date that FCA US LLC made any attempt to notify [her] of any of the known defects in the TIPM7." (*Id.*) "Plaintiff opted out of the class action settlement in *Velasco* and filed the instant action to pursue [her] individual rights." (*Id.* at 24, ¶ 127)

On April 22, 2016, Plaintiff filed her complaint in Fresno County Superior Court, Case No. 16CECG01288. (*See* Doc. 1-1 at 3) Plaintiff identified the following causes of action in her complaint: (1) breach of an express warranty pursuant to the Song-Beverly Act, (2) breach of an implied warranty pursuant to the Song-Beverly Act, and (3) fraudulent inducement. (*Id.* at 25-30) Her prayer for relief included, but was not limited to: general, special and actual damages; recession of the purchase contract and restitution of all monies expended; diminution in value; civil penalties totaling two times her actual damages, and reasonable attorney fees and costs. (*See id.* at 30) Defendant filed its answer in May 2016, asserting in part that Plaintiff's complaint was "moot based upon the fact that FCA US LLC …offered to reimburse Plaintiff for her vehicle." (Doc. 1-1 at 46, ¶ 28)

On May 25, 2016, Defendant filed a Notice of Removal pursuant to 28 U.S.C. §§ 1332, 1441(a) and 1446(a), thereby initiating the matter with this court. (Doc. 1) Plaintiff filed a motion to remand the action to the state court on June 22, 2016. (Doc. 6) The Court determined it had diversity jurisdiction over the action and denied the motion to remand on August 23, 2016. (Doc. 17) Following this determination, the Court held a Scheduling Conference with the parties, and the matter was set for trial in November 2017. (Doc. 23)

On October 25, 2017, the Court held a settlement conference with the parties, at which time the matter was settled. (Doc. 75) The Court ordered Plaintiff to file the motion for attorney fees and costs no later than January 19, 2018. (*Id.*) Plaintiff timely filed this motion, which is now pending before the Court. (Doc. 80) Defendant filed its opposition to the motion on February 9, 2018 (Doc. 81), to which Plaintiff filed a reply on February 23, 2018. (Doc. 83)

**II.    Legal Standard**

"In a diversity case, the law of the state in which the district court sits determines whether a party is entitled to attorney fees, and the procedure for requesting an award of attorney fees is governed

3

by federal law. *Carnes v. Zamani*, 488 F.3d 1057, 1059 (9th Cir. 2007); *see also Mangold v. Cal. Public Utilities Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995) (noting that in a diversity action, the Ninth Circuit "applied state law in determining not only the right to fees, but also in the method of calculating the fees").

As explained by the Supreme Court, "[u]nder the American Rule, 'the prevailing litigant ordinarily is not entitled to collect a reasonable attorneys fee from the loser.'" *Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Electric Co.*, 549 U.S. 443, 448 (2007) (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975)). However, a statute allocating fees to a prevailing party can overcome this general rule. *Id.* (citing *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 717 (1967)). Under California's Song-Beverly Act, a prevailing buyer is entitled "to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." Cal. Civ. Code § 1794(d).

The Song-Beverly Act "requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended and the monetary charge being made for the time expended are reasonable." *Nightingale v. Hyundai Motor America*, 31 Cal.App.4th 99, 104 (1994). The court may consider "factors such as the complexity of the case and procedural demands, the skill exhibited and the results achieved." *Id.* If the court finds the time expended or fee request "is not reasonable under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount." *Id.* "A prevailing buyer has the burden of showing that the fees incurred were 'allowable,' were 'reasonably necessary to the conduct of the litigation,' and were 'reasonable in amount.'" *Id.* (quoting *Levy v. Toyota Motor Sales, U.S.A., Inc.*, 4 Cal. App. 4th 807, 816 (1992)); *see also Goglin v. BMW of North America, LLC,* 4 Cal. App. 5th 462, 470 (2016) (same).

If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." *Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc.*, 163 Cal. App. 4th at 550, 564 (2008). Rather, the opposing party has the burden to demonstrate the hours spent are

duplicative or excessive. *Id.* at 562, 564; *see also Gorman v. Tassajara Dev. Corp.*, 178 Cal. App. 4th 44, 101 (2009) ("[t]he party opposing the fee award can be expected to identify the particular charges it considers objectionable").

**III.   Evidentiary Objections**

Both parties object to evidence presented in support of and in opposition to the motion for fees and costs. (Doc. 81-2; Doc. 83-2) The Court has read and considered each objection made by Defendant and Plaintiff, and to the extent the Court considers any evidence to which there was an objection in its analysis, the objection is overruled.

**IV.   Discussion and Analysis**

As a prevailing buyer, Plaintiff is entitled to an award of fees and costs under the Song-Beverly Act. *See* Cal. Civ. Code § 1794(d); *see also Goglin,* 4 Cal. App. 5th at 470. Here, Plaintiff seeks: (1) an award of attorney's fees pursuant to the Song-Beverly Act in the amount of $37,847.50[1]; (2) a lodestar multiplier of 1.5; and (3) actual costs and expenses of $5,167.69. (Doc. 80-1 at 7) Defendant acknowledges, "Plaintiff is entitled to recover attorney's fees, costs, and expenses," but argues the amount requested is unreasonable. (*See* Doc. 81 at 6)

**A.   Fee Request**

Plaintiff seeks $34,195.00 for the work completed by Knight Law and $3,652.50 for work completed by Wirtz Law APC. (Doc. 80-1 at 10; Doc. 80-2 at 20)

1.   Hours worked by counsel

A fee applicant must provide time records documenting the tasks completed and the amount of time spent. *Hensley v. Eckerhart*, 461 U.S. 424, 424 (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). Under California law, a court "must carefully review attorney documentation of hours expended" to determine whether the time reported was reasonable. *Ketchum v. Moses*, 24 Cal.4th 1122, 1132 (2001) (quoting *Serrano v. Priest*, 20 Cal.3d 25, 48 (1977)). Thus,

---

[1] In the motion, Plaintiff indicates she is seeking fees in the amount of $40,410.00—plus the multiplier—for the work completed by her attorneys. (Doc. 80 at 1) According to Plaintiff, this total included $36,757.50 for the work completed by Knight Law. (Doc. 80-1 at 10) However, the billing records show a total of $34,195.00 for the tasks Knight Law completed, including the anticipated time expended in reviewing Defendant's opposition to the motion and preparing the reply. Accordingly, it appears the calculation identified by Plaintiff in the motion is erroneous. Instead, total for the work by both firms is $37,847.50.

5

evidence provided by the fee applicant "should allow the court to consider whether the case was overstaffed, how much time the attorneys spent on particular claims, and whether the hours were reasonably expended." *Christian Research Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1320 (2008). The court must exclude "duplicative or excessive" time from its fee award. *Graciano v. Robinson Ford Sales, Inc.*, 144 Cal.App.4th 140, 161 (2006); *see also Ketchum*, 24 Cal.4th at 1132 ("inefficient or duplicative efforts [are] not subject to compensation").

Defendant objects to the hours reported by Plaintiff's counsel and contends there was "improper staffing of routine tasks and duplication of activity that should be subtracted from any fee award." (Doc. 81 at 11, emphasis omitted)  Further, Defendant argues no fees should be awarded to the Wirtz firm because it "did no substantive work other than perhaps preparing an exhibit list that was never needed." (*Id.* at 12)

### a. Work completed by Knight Law Group

Steve Mikhov reports that attorneys at Knight Law Group spent 82.9 hours on this action, through preparing the motion for fees and costs. (*See* Doc. 80-2 at 20)  Defendant objects to many entries in the time sheets as routine and duplicative, stating: "The invoice attached to the declaration of Mr. Mikhov… contains multiple instances of him purportedly performing tasks that are more appropriate for junior attorneys, particularly where he never had any intention of drafting documents or appearing at hearings." (Doc. 81 at 11)

Significantly, Defendant identifies no legal authority supporting its assertion that fees should not be awarded for non-clerical tasks that *could* be completed by a junior attorney but were, instead, completed by senior counsel.  However, Defendant has also identified tasks performed by Mr. Mikhov that are duplicative of the work performed by Alastair Hamblin, including: "Review Def's NOD of Plaintiff," "Review of Def's NOD of Barbara Luna," and "Review Def's NOD of Darrell Blasjo." (Doc. 81 at 12; *see also* Doc. 80-2 at 20)  For each of these tasks, Mr. Mikhov billed 0.1 hour. (*Id.*) Mr. Hamblin indicated he also reviewed each NOD and drafted Plaintiff's objections to each document, for which Mr. Hamblin billed 0.7 hour total. (Doc. 80-2 at 19)  Because Mr. Mikhov's work duplicates that of Mr. Hamblin, it should not be awarded. *See Graciano*, 144 Cal.App.4th at 161; *Ketchum*, 24 Cal.4th at 1132.  Accordingly, the lodestar for Mr. Mikhov will be reduced by 0.3 hour.

Further, the Court declines to award time counsel anticipated they would expend in reviewing the opposition to the motion, drafting the reply brief, or preparing and attending the hearing on the motion for fees. No evidence of the time actually spent on these efforts was documented to the Court. The Court declines to speculate as to the actual time spent by counsel, as it is the fee applicant's burden to present evidence to support a motion. *See Hensley*, 461 U.S. at 424; *Welch*, 480 F.3d at 945-46. Accordingly, the lodestar calculation below will reflect a reduction of 13.5 hours for anticipated work by Deepak Devabose.

### b. *Work completed by Wirtz Law APC*[2]

Plaintiff asserts that "Knight Law associated Wirtz Law into the case to take over as lead trial counsel." (Doc. 80-1 at 9) Defendant objects to "the entire invoice from … Mr. Wirtz's firm totaling $3,652.50 because Plaintiff fails to offer an explanation based on admissible evidence for why it took two firms who claim to be experts in their field to handle this simple case." (Doc. 81 at 7) However, Defendant fails to identify any tasks that duplicate work completed by the law firm of Knight Law, or that did not benefit Plaintiff in preparing for trial. The Ninth Circuit has "recognized that 'the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort.'" *McGrath v. County of Nevada*, 67 F.3d 248, 256 (1995) (quoting Kim v. Fujikawa, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989)).

On the other hand, the Court notes that the time for Wirtz Law includes an entry for 0.5 hour for preparation of an exhibit list. (Doc. 80-2 at 22) This is a purely clerical task that should be excluded from the lodestar calculation. *See Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10 (1989). Therefore, the lodestar calculation below will reflect a deduction of 0.5 hour for Ms. Smith's time preparing the exhibit list.

### 2. Hourly rates

The Supreme Court explained that attorney fees are to be calculated with "the prevailing market rates in the relevant community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see also*

---

[2] In support of the motion for fees, Mr. Wirtz asserted that he attached "a copy of [his] firm's billing incurred in the prosecution of this matter" to his declaration. (Doc. 80-3 at 3, ¶ 6) No objection was made as to the admissibility of the document attached to his declaration, or to the sufficiency of this statement to authenticate the document as a business record. As such, the Court finds any objection to its admissibility is waived.

7

*PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 1096 (2000) ("[t]he reasonable hourly rate is that prevailing in the community for similar work"). The fee applicant has the burden to establish the rates are reasonable with the community, and meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 896 n.11

In general, the "relevant community" for purposes of determining the prevailing market rate is the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir. 2008). Thus, when a case is filed in this Court, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate." *See Jadwin v. County of Kern*, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011); *see also Gordillo v. Ford Motor Co.*, 2014 U.S. Dist. LEXIS 84359, 2014 WL 2801243 (E.D. Cal. June 19, 2014) (in a diversity action awarding fees under the Song-Beverly Act, the court looked to hourly rates in the Fresno Division, and adjusted the lodestar accordingly).

The court may apply "rates from outside the forum… 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" *Barjon v. Dalton*, 132 F.3d 496 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)). Plaintiff presents no evidence that local counsel was either unwilling or unable to prosecute her claims in this action. Thus, the Court must determine whether the hourly rates requested by counsel are reasonable for the Fresno Division of the Eastern District. *See, e.g., Gordillo*, 2014 WL 2801243 at *5-6.

The attorneys at Knight Law Group seek hourly rates ranging from $250 to $500, while attorneys at Wirtz Law Group seek hourly rates of $325 and $500. (Doc. 80-2 at 20; Doc. 80-3 at 6) In support of counsel's lodestar calculation and the fee request based upon these hourly rates, Plaintiff requests the Court review:

> (i) the hourly rates set forth in the accompanying declarations (SM Dec., Par. 22-31); (ii) a survey of rates charged by other well-known consumer law counsel (SM Dec., Par. 33); (iii) nearly three dozen court orders confirming the reasonableness of the requested rates in other Song-Beverly cases (SM Dec., Pars. 33-54); and (iv) a national survey further demonstrating the reasonableness of the requested rates (RW Dec., Par.7)

8

(Doc. 80-1 at 12) However, this evidence does not address the local forum or assist the Court in its analysis. For example, while Mr. Mikhov reports "the hourly rates of other attorneys in the [state of] California who work in the area of lemon law and consumer law," he does not identify any attorneys practicing in the Eastern District. (*See* Doc. 80-2 at 7, ¶¶ 33)

Further, though Mr. Mikhov identifies four cases in which the attorneys were awarded fees from state courts within the Eastern District boundaries—including Kern County and Tulare County—the state courts' orders offer no analysis regarding whether the hourly rate was reasonable for local counsel. (*See, e.g.* Doc. 80-2 at 28, 77) Without such analysis, the Court is unable to determine whether the plaintiffs presented evidence that local counsel was either unwilling to take their cases or unable to do so, such that the higher hourly rate was warranted. Given the lack of such evidence here, the hourly rates will be reduced for purposes of calculating the lodestar. *See, Gordillo*, 2014 U.S. Dist. LEXIS 84359 at *14-15; *Barjon v. Dalton,* 132 F.3d 496, 500-02 (9th Cir. 1997) (affirming the district court's decision to decline an award of out-of-district billing rates where the fee applicants failed "to prove the unavailability of local counsel," and reduced the award to the hourly rates in the relevant community).

Previously, this Court reviewed the billing rates for the Fresno Division and determined "hourly rates generally accepted in the Fresno Division for competent experienced attorneys [are] between $250 and $380, with the highest rates generally reserved for those attorneys who are regarded as competent and reputable and who possess in excess of 20 years of experience." *Silvester v. Harris*, 2014 WL 7239371 at *4 (E.D. Cal. Dec. 2014). For attorneys with "less than ten years of experience . . . the accepted range is between $175 and $300 per hour." *Silvester,* 2014 WL 7239371 at *4 (citing *Willis v. City of Fresno*, 2014 WL 3563310 (E.D. Cal. July 17, 2014); *Gordillo v. Ford Motor Co.*, 2014 WL 2801243 (E.D. Cal. June 19, 2014)). With these parameters in mind, the hourly rates for counsel must be adjusted to calculate the lodestar.

The hourly rate for Richard Wirtz, who has been practicing law for nearly thirty years and has been rated "as a Super Lawyer for the last five years" and received "the highest possible rating awarded [by] Martindale Hubbell" (Doc. 80-3 at 2, ¶ 4) will be adjusted to $400, in light of his extensive experience and reputation. The hourly rates for Mr. Mikhov and Russell Higgins, who were admitted

to the bar in 2003 and have practiced law for nearly fifteen years, will be reduced to $300. *See Trujillo v. Singh,* 2017 WL 1831941 (E.D. Cal. May 8, 2017) (awarding an hourly rate of $300 per hour to counsel with 15 years of experience, finding this amount was appropriate for the Fresno area); *Gordillo*, 2014 WL 2801243 (awarding an hourly rate of $300 to an attorney who had "represented thousands of California consumers with Song–Beverly claims in the last fourteen years"). The hourly rate for Kristina Stephenson-Cheang, who began practicing law in 2008, will be adjusted to $250. Further, the rates for Christopher Swanson, Alastair Hamblin, Amy Morse, and Amy Smith—who began practicing law between 2011 and 2013—will be adjusted to $225. Finally, the hourly rate for Deepak Devabose, who has less been in practice for less than five years, is adjusted to $175.

Based upon the prior survey of the attorney fees in the Fresno Division and the Court's own knowledge, these hourly rates are reasonable. *See Silvester,* 2014 WL 7239371 at *4; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (concluding "the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience" to determine reasonable hourly rates).

### 3. Lodestar calculation

The lodestar method calculates attorney fees by "by multiplying the number of hours reasonably expended by counsel on the particular matter times a reasonable hourly rate." *Florida*, 915 F.2d at 545 n. 3 (citing *Hensley*, 461 U.S. at 433); *see also Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016). With the time and rate adjustments set forth above, the lodestar in this action is **$23,825.00**:

| LAW FIRM | ATTORNEY | HOURS | RATE | LODESTAR |
|---|---|---|---|---|
| **Knight Law Group ($21,145.00)** | Steve Mikhov | 13.3 | $300 | $3,990.00 |
| | Russell Higgins | 24.4 | $300 | $7,320.00 |
| | Kristina Stephenson-Cheang | 3.3 | $250 | $825.00 |
| | Christopher Swanson | 0.2 | $225 | $45.00 |
| | Alastair Hamblin | 30.2 | $225 | $6,795.00 |
| | Amy Morse | 4.2 | $225 | $945.00 |
| | Deepack Devabose | 7.0 | $175 | $1,225.00 |
| | | | | |
| **Wirtz Law, APC ($2,680.00)** | Richard Wirtz | 4.9 | $400 | $1,960.00 |
| | Amy Smith | 3.2 | $225 | $720.00 |
| | | | | |
| **TOTAL** | | 90.7 | | **$23,825.00** |

///

|   |   |
|---|---|
| 1 | 4. Application of a multiplier |
| 2 | Once a court has calculated the lodestar, "it may increase or decrease that amount by applying |
| 3 | a positive or negative 'multiplier' to take into account a variety of other factors, including the quality |
| 4 | of the representation, the novelty and complexity of the issues, the results obtained, and the contingent |
| 5 | risk presented." *Laffitte,* 1 Cal.5th at 504 (citation omitted); *see also Ketchum v. Moses*, 24 Cal.4th |
| 6 | 1122, 1132 (2001) (indicating the court may adjust the fee award considering "the following factors: |
| 7 | (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) |
| 8 | the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the |
| 9 | contingent nature of the fee award"). |
| 10 | Plaintiff requests a "'lodestar' modifier of 1.5," which she asserts is "modest and reasonable." |
| 11 | (Doc. 80-1 at 7) Plaintiff contends: |
| 12-15 | Throughout this litigation there always existed the real possibility that plaintiff would not prevail. Defendant's 998 Offer created additional risk because plaintiff would need to prevail with civil penalties at trial--anything less would cut off attorney fees as of the date of the offer. In addition, plaintiff's litigations costs and expense were advanced without reimbursement. Thus, if plaintiff did not prevail, counsel would have suffered a loss of many hours of uncompensated work plus several thousand dollars of out-of-pocket expenses. |
| 16 | (*Id.* at 17, emphasis omitted) |
| 17 | Significantly, however, this case did not present novel or difficult questions of law or fact. |
| 18 | Indeed, the issues related to the TIPM were addressed in *Velasco, et al. v. Chrysler Group LLC*, Case |
| 19 | No. 2:13-cv-08080-DDP-VBK. Thus, the issues presented in this action were not complex. *See Steel v.* |
| 20 | *GMC,* 912 F. Supp. 724, 746 (N.J. Dist. 1995) ("the issues in lemon law litigation are not complex and |
| 21 | do not require a significant amount of legal analysis or novel pleading") Further, as Defendant |
| 22 | observes, the facts were not significantly disputed and little discovery was required. No depositions |
| 23 | were taken, and no vehicle inspection was performed. (*See* Doc. 81 at 13) Thus, it does not appear that |
| 24 | significant skill was needed to pursue Plaintiff's claims. Furthermore, there is no evidence that "the |
| 25 | nature of the litigation precluded other employment by the attorneys." To the contrary, Plaintiff's |
| 26 | counsel—nine attorneys in total—expended less than 100 hours of work on this action over the course |
| 27 | of eighteen months. Finally, the Court finds the contingent nature of the fee award is outweighed by |
| 28 | the other factors, particularly in this action where the disputed facts and issues to be resolved were |

minimal. Accordingly, the Court finds the lodestar amount of $**23,825.00** is reasonable and declines to award a multiplier.

**B.      Costs to be Awarded**

In general, an award of costs in federal district court is governed by Federal Rule of Civil Procedure 54(d) and not applicable state law, even in diversity cases. *See Champion Produce, Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 1016, 1022 (9th Cir. 2003) (citing *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n. 2 (9th Cir. 1987)). This is because "federal courts sitting in diversity apply state substantive law and federal procedural law." *Feldman v. Allstate Ins. Co*., 322 F.3d 660, 666 (9th Cir. 2003) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Thus, federal procedural law governs a request for an award of costs.

Rule 54 of the Federal Rules of Civil Procedure provides that costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). This "creates a presumption in favor of awarding costs to the prevailing party, but the district court may refuse to award costs within its discretion." *Champion Produce*, 342 F.3d at 1022. "[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003). For example, costs may be declined in light of "a losing party's limited financial resources" or where there has been "misconduct by the prevailing party." *Champion Produce*, 342 F.3d at 1022.

Plaintiff requests costs in the amount of $5,167.69. (Doc. 80-1 at 17; Doc. 80-4 at 1) According to Plaintiff, this includes $4,615.00 in compensation for court-appointed experts. (Doc. 80-4 at 1) However, no experts were appointed by the Court. Moreover, the Supreme Court explained that 28 U.S.C. § 1920 "defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 441 (1987). Costs that may be taxed under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Generally, the court may not award costs under Rule 54(d) that are not authorized by statute or court rule. *Arlington Cent. School Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 301 (2006).

Plaintiffs rely on *Jensen v. BMW of North America., Inc.*, 35 Cal.App.4th 112, 138 for the proposition that money spent on experts in this type of case is recoverable. The *Jensen* court refused to allow the amount sought but remanded the case for a determination whether the expert fees were "'reasonably incurred by the buyer in connection with the commencement and prosecution of [this] action. (§ 1794, subd. (d).).'" *Id*.

Even if state law applied and the Court agreed with the analysis,[3] *Jensen* does not mandate the allowance of expert fees but only those that were reasonably incurred. The plaintiff offers no showing whatsoever that the expert was reasonably needed. In addition, the defense notes that the expert disclosure made by the plaintiff failed to include a report, which, means it did not comply with Rule 26 which would have precluded the expert's testimony at trial.

Because the expert fees are not recoverable as a cost under federal law, they are disallowed. The remaining costs identified by Plaintiff are compensable under federal law. Accordingly, Plaintiff's request for costs is granted in the modified amount of $552.69.

**V.     Conclusion and Order**

Based upon the foregoing, the Court **ORDERS**:

1. Plaintiff's motion for fees is **GRANTED** in the modified amount of $**23,825.00**; and
2. Plaintiff's motion for costs is **GRANTED** in the amount of $**552.69**.

IT IS SO ORDERED.

Dated:   **March 7, 2018**          **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE

---

[3] The Court does not. In addition, though the legislative history indicated the Legislature was concerned that indigent litigants would not have access to the courts due to the cost of litigation, generally, there is no showing here that the plaintiffs were indigent and the fact that this case involves a vehicle costing more than $50,000, such a conclusion cannot be drawn.

Moreover, many courts find the reliance on "legislative history" to be troubling as an attack on the legislative process. "Legislative history" is not endorsed by the Legislature and there is never any indication that any legislator ever contributed to its drafting and, certainly, the Legislature never voted on the interpretation recited by the author(s) of the "legislative history." Indeed, the authors themselves are usually not identified.